IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT L. HOLMES, JR.** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 05-421 |
| | : | |
| **CEMCOLIFT INC.** | : | |
| | : | |
| | : | |

**MEMORANDUM AND ORDER**

Kauffman, J.                                                                                           October 11, 2006

Plaintiff Robert L. Holmes, Jr. ("Plaintiff") brings this action against Cemcolift Incorporated ("Cemcolift" or "Defendant") for violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.  Now before the Court is Cemcolift's motion for partial summary judgment as to Plaintiff's ADA claims.  For the reasons that follow, Cemcolift's motion will be granted.

**I. BACKGROUND**

This case arises out of Plaintiff's dismissal from his position as a welder with Cemcolift. Plaintiff was employed by Cemcolift for approximately 16 years, from September 18, 1987 until his termination on November 6, 2003.  See Compl. ¶9; Answer ¶9.  Plaintiff has been diagnosed with bronchial asthma.  See Defendant's Statement of Material Facts ("Def.'s Statement") ¶3; Plaintiff's Response to Defendant's Statement of Material Facts ("Pl.'s Resp. to Statement") ¶3. The record is not clear as to when Cemcolift first learned of Plaintiff's asthma diagnosis;[1]

---

[1] Cemcolift admits that an undated physician's report found in Plaintiff's personnel file, similar to the type of report used to document a pre-employment physical, stated that Plaintiff suffers from bronchial asthma.  See Def.'s Statement ¶58 and n.1.

1

however, Cemcolift acknowledges that it was aware of Plaintiff's condition at the time of his termination.  See Def.'s Statement ¶58; Pl.'s Resp. to Statement ¶3, 58.

Both parties agree that Plaintiff demonstrated the "requisite skill and experience to perform his job effectively" during his tenure at Cemcolift.  See Def.'s Statement ¶66; Pl.'s Resp. to Statement ¶66.  However, both parties also agree that from 1999 to 2003, Plaintiff had 142 full days and 10 half days of unexcused absences.  See Def.'s Statement ¶72; Pl.'s Resp. To Statement ¶72.  In October 2003, following unexcused absences during the summer and fall of 2003, Cemcolift issued to Plaintiff a written warning for excessive absences.  See Compl. ¶13; Answer ¶13.  During conversations with Plaintiff regarding his attendance, Cemcolift provided him with FMLA health care certification forms, but did not specify a deadline for returning the forms.  See Compl. ¶14, 15; Answer ¶14, 15.

After receiving both the written warning and the FMLA forms, Plaintiff underwent a comprehensive physical examination on October 22, 2003 at the direction of his physician, Dr. Jack McEwan.  See Def.'s Statement ¶28; Pl.'s Resp. to Statement ¶28.  Following the exam, Dr. McEwan wrote Plaintiff an "Excuse Slip" for work indicating that he could perform sedentary work but no lifting until cleared by a cardiologist.  See Def.'s Statement ¶¶22, 36; Pl.'s Resp. to Statement ¶¶22, 36.  Dr. McEwan also wrote four other notes diagnosing Plaintiff with Chronic Obstructive Pulmonary Disease (COPD), mentioning possible chromium exposure, and ordering a pulmonary consult, a cardiology consult, and a sleep study.  See Def.'s Statement ¶29; Pl.'s Resp. to Statement ¶29.  Neither the "Excuse Slip" nor the four other notes referred to Plaintiff's asthma condition.  See Def.'s Statement ¶30; Pl.'s Resp. to Statement ¶30.

Plaintiff reported to work on October 23, 2003 and submitted the notes from Dr. McEwan to his immediate supervisor, Steve Brinckman.  See Def.'s Statement ¶54; Plaintiff, Robert L.

Holmes Jr.'s Response to Cemcolift, Inc.'s Motion for Partial Summary Judgment ("Pl.'s Opp.") at p. 5-6. After submitting the notes, Plaintiff was sent home to await further instructions. See Def.'s Statement ¶54; Pl.'s Opp. at p.6. Plaintiff subsequently was notified by a letter dated November 6, 2003 that he had been terminated. See Def.'s Statement ¶1; Pl.'s Opp. at p. 6.

Prior to being terminated, Plaintiff underwent a pulmonary consultation on October 30, 2003 with Dr. Stanley P. Silverman from Abington Pulmonary & Critical Care Associates, Ltd. ("Abington"). See Def.'s Statement ¶38; Pl.'s Resp. to Statement ¶38. The treatment report prepared by Dr. Silverman indicates that Plaintiff "works as a welder and [has] no significant problems when he is at work and exposed to fumes." See id. However, Dr. Silverman recommended that Plaintiff not return to work until after a follow-up visit in approximately two weeks. See Defendant, Cemcolift Incorporated's Motion for Partial Summary Judgment ("Def.'s Mot.") at Exhibit D.

Plaintiff was cleared to return to work, without restrictions, by a cardiologist from Central Bucks Cardiology on November 10, 2003. See Def.'s Statement ¶¶24, 37; Pl.'s Resp. to Statement ¶¶24, 37. A physician at Abington also cleared Plaintiff to return to work as a welder following a November 28, 2003 follow-up visit. See Def.'s Statement ¶39; Pl.'s Resp. to Statement ¶39. However, the physician at Abington recommended that Plaintiff consider job re-training and stated that it was imperative that he wear a mask while at work. See id.

Plaintiff worked as a welder/fabricator and/or a machine operator with three different employers after his termination from Cemocolift, and was "at all times available and ready to work until late April 2005 when his doctor declared [him] disabled from work." See Def.'s Statement ¶40 (citing Plaintiff's interrogatory responses), 42; Pl.'s Resp. to Statement ¶ 40, 42. As of the filing of Defendant's motion, Plaintiff had not yet been officially declared disabled by

the state or federal government. See Def.'s Statement ¶41; Pl.'s Resp. to Statement ¶41.

Following his termination, Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") against Cemcolift. See Compl. ¶ 7. On November 3, 2004, he was issued a "Right to Sue" letter. See id. Plaintiff filed his Complaint with this Court on January 31, 2005, alleging violations of FMLA and the ADA.

## II. LEGAL STANDARD

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for its motion. See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). If the movant meets that burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial." Id.

## III. ANALYSIS

The ADA prohibits employers from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In addition, the ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." Id. § 12112(b)(5)(A).

In order for a plaintiff to establish a prima facie case of discrimination under the ADA, the plaintiff must demonstrate that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent Tech., 134 F.3d 576, 580 (3d Cir. 1998) (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)). Once the plaintiff establishes a prima facie case, the defendant must rebut an inference of wrongdoing with evidence of a legitimate, non-discriminatory or non-retaliatory reason for the action taken. See Peter v. Lincoln Tech. Inst., 255 F. Supp. 2d 417, 424 (E.D. Pa. 2002). If the defendant successfully meets this burden, in order to avoid summary judgment the plaintiff must present evidence of pretext or cover-up, or show that discrimination played a role in the employer's decision-making and had a determinative effect on the outcome. See id.

Cemcolift argues that Plaintiff has failed to meet its initial burden of establishing a prima facie case of discrimination under the ADA. Specifically, Cemcolift asserts that Plaintiff cannot satisfy the first element of a prima facie case because he is not a disabled person within the

meaning of the ADA.  See Def.'s Mot. at 4-15.  Cemcolift also asserts that even if Plaintiff is found to be disabled within the meaning of the ADA, he cannot satisfy the second element of a prima facie case because he is not a "qualified individual" under the ADA.  See Def.'s Mot. at 15-20.  Because the Court agrees that Plaintiff is not a "qualified individual" under the second element of a prima facie ADA case, it need not address the issue of whether he is "disabled" within the meaning of the ADA.

The ADA defines a "qualified individual with a disability" as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  Under the relevant regulations, the inquiry is divided into two prongs: (1) whether the individual has the requisite skill, experience, education, and other job requirements of the position; and (2) whether the individual, with or without reasonable accommodation can perform the essential functions of the position.  See 29 C.F.R. § 1630.2(m).

The parties in this case do not dispute that Plaintiff had the requisite skill and experience to perform his job.  See Def.'s Statement ¶66; Pl.'s Resp. to Statement ¶66.  Therefore, the Court must turn to the second prong of the inquiry.  In order to determine whether Plaintiff, with or without reasonable accommodation, could perform the essential functions of his position, the Court first considers whether he could have performed the essential functions of the job *without* accommodation.  See Deane v. Pocono Med. Ctr., 142 F.3d 138, 146 (3d Cir. 1998).  If Plaintiff could not have performed the essential functions of his job without an accommodation, the Court examines whether he could have performed the essential functions of his job *with* a reasonable accommodation.  See id.  If he could not have performed the essential functions of his job even with an accommodation, Plaintiff has failed to establish that he is a qualified individual under the

ADA.  See id.

Cemcolift argues that Plaintiff's frequent absences prevented him from being capable of performing the essential functions of his job.  See Def.'s Mot. at 16.  "Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee 'who does not come to work cannot perform any of his job functions, essential or otherwise.'" Tyndall v. Nat'l Educ. Ctrs., Inc., 31 F.3d 209, 213 (4th Cir. 1994) (citations omitted).  "A regular and reliable level of attendance is a necessary element of most jobs."  Id.  Accordingly, an employee who cannot meet the attendance requirements of the job at issue is not a "qualified individual" under the ADA.  See Smith v. Davis, 248 F.3d 249, 251 (3d Cir. 2001) (citing Tyndall, 31 F.3d at 213); Meyers v. Conshohocken Catholic, 2004 WL 3037945, at *8 (E.D. Pa. Dec. 30, 2004) (citing Smith, 248 F.3d at 251).

Plaintiff does not dispute that between 1999 and 2003, he had 142 full days and 10 half days of unexcused absences.  See Def.'s Statement ¶72; Pl.'s Resp. to Statement ¶72.  However, he argues that by tolerating his absences in the past, Cemcolift, in effect, waived its right to raise these absences as a defense.  See Pl.'s Opp. at 14.  Moreover, Plaintiff argues that there is no evidence that he ever requested an accommodation relating to continued excused absences, and that at the time of his termination, the only work he had missed after receiving his written warning on October 2, 2003 was when he was sent home on October 22, 2003.  See id.

However, Plaintiff's job as a welder required regular attendance at work since the essential functions of his job could not be performed from home.  The record in this case establishes that throughout his employment with Cemcolift, Plaintiff was not able to provide regular and reliable attendance.  Although the notes from Dr. McEwan submitted just prior to his termination only imposed temporary limitations on Plaintiff's ability to perform his welding job,

7

the notes provided no indication that he would not continue to accrue absences in the future. Plaintiff himself testified that depending on the type of task he was asked to perform, he would subsequently miss work.  See Deposition of Robert Holmes at 76, attached to Def.'s Mot. at Exhibit G ("But as far as the sick policies go, they never really said anything as long as I did my work.  Gary Herman was my boss, the foreman at the time, and he knew that I would – depending on my work, if I was doing something dirty, I would be out because I would be sick").

Even assuming Cemcolift accommodated Plaintiff's absences in the past, it was under no obligation to continue to do so.  "The Third Circuit has found that when an employer has exceeded the ADA's requirement of reasonable accommodation, its decision to discontinue the accommodation does not give the plaintiff a cause of action against it." Meyers, 2004 WL 3037945, at *9 (citing Walton v. Mental Health Association of Southeastern Pennsylvania, 168 F.3d 661, 671 (3d Cir. 1999).  "An employer's policies that exceed the requirements of the ADA do not set the standard of reasonable accommodation nor do they demonstrate that an employer has conceded the reasonableness of such accommodations." Id.  Thus, Cemcolift is not required under the ADA to tolerate Plaintiff's absences indefinitely since an employer need not eliminate the essential functions of a position in order to accommodate an employee's disability. Id. Accordingly, since Plaintiff was not able to perform the essential functions of his job, he is not a "qualified individual" within the meaning of the ADA, and therefore cannot establish a prima facie case of discrimination under the ADA.

IV. CONCLUSION

For the aforementioned reasons, Cemcolift's motion for partial summary judgment with respect to Plaintiff's claims under the Americans with Disabilities Act of 1990, 42 U.S.C.

§12101, et seq., is granted.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT L. HOLMES, JR.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 05-421 |
| | : | |
| **CEMCOLIFT INC.** | : | |
| | : | |
| | : | |

### ORDER

**AND NOW**, this 11th day of October, 2006, upon consideration of Defendant Cemcolift Incorporated's Motion for Partial Summary Judgment (docket no. 17) and Plaintiff Robert L. Holmes Jr.'s Response thereto (docket no. 19), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **GRANTED**.


BY THE COURT:


/s/ Bruce W. Kauffman

**BRUCE W. KAUFFMAN, J.**